Good morning, and may it please the Court. Robert Ellman for Gregory McKay, the Director of the Arizona Department of Child Safety. With me is Nick Asato, representing the Director of the Arizona Health Care Cost Containment System. We've designated a split in time, and that's so that Mr. Asato can address any Medicaid-specific questions that the Court may have, and I will attempt to reserve time today as well for rebuttal. Arizona judges have entrusted 13,000 minor children to the care and custody of the Department of Child Safety. And although Greg McKay was not yet the director of that agency when this lawsuit was filed, the plaintiffs allege that Director McKay's deliberately indifferent act or refusal to act has created a substantial risk of harm for every child in the foster care system, which is to say a conscience-shocking risk that places all children in imminent danger of the deprivation of what society would consider the minimal necessities of life. If proving that kind of dereliction and harm, that magnitude, on behalf of 13,000 people seems formidable, it is, in order to move forward as a class, the plaintiffs should have been required to carry two daunting burdens that they were relieved of when the district court applied the Parsons paradigm. They identified no common body of class-wide evidence that any of the plaintiffs could have used in order to establish a deliberate, excuse me, in order to establish a substantive due process violation. Beyond that, they failed to find any path that the district court could follow in order to avoid review of highly individualized You concede we're bound by Parsons, right? Yes, I can, Your Honor. And we do acknowledge that, except Because there were some arguments in the brief that suggested somehow that, I don't know, we were supposed to overrule that or something, I think. Well, I agree that the panel could not overrule the prior decision of another panel. However, there are jurisprudential reasons to at least address the merits, even if the court is bound. That was kind of a breakthrough case by my deceased colleague. And it does come as quite a surprise, such a change of view. But we are required, unless we go in bank, to file it, to follow it completely. And I understand your point of view on this. But it has become the law of the circuit, and you have to deal with it directly as it's written. I understand that puts you at a disadvantage, but. I understand and I agree that that is the effect of the panel decision in Parsons. However, if this Court proceeds to at least address the merits and the tension that Parsons created, it will provide the rest of the judges on the Court. What do you mean the merits, Your Honor? We don't ordinarily, as a panel, as filing a petition for re-hearing in bank, you'll have an opportunity to file for re-hearing in bank, but it's not common that you'll see anything where a panel decides to undercut another panel. I'm sorry I interrupted. No, no. I think I was just making the same point. I understand and I appreciate that, Your Honor. The only point we're really trying to get across is that if Judge Aikuda's dissent is correct, then until this issue is taken up on bank, it will continue to cause district judges throughout the circuit. The dilemma that it's been causing, which is they would have to either follow Parsons and defy Wal-Mart. But isn't that a dilemma? They have to follow the law. I don't understand that argument you make. It's the law, so if you want to change the law, there's a way to do it. But that's not to make an argument here. Yes, Your Honor. It was premised on the idea that Judge Aikuda's dissent is correct. And I do need to note that this panel still can reach the Medicaid-specific claims because they're not — they're based on an extension of Parsons to the Medicaid statute. As for the due process claims, though, it doesn't seem that you're asking us to say that Parsons was incorrectly applied. It seems like you think the district court applied Parsons and you're just quibbling with Parsons, right? We have taken that position, Your Honor. It's difficult to find it. So we're just a way station here because we really can't help you with that. I understand, Your Honor. And again, I'm just asking for some sort of — So if we need to turn to the Medicaid claim because that's really the only argument that we can even consider, does that mean we should talk to your colleague or do you want to proceed about that? Well, I would like to explain what the error is, if I may. And I think a rigorous analysis of the kind required by Wal-Mart would have revealed What the error in Parsons was? That's what you wanted to explain? Actually, I was talking about how the district court in our case failed to recognize what the contradiction was. And again But the district court couldn't do that either. The district court is bound by Parsons, just like we as a panel are. That's correct, Your Honor. And I just, again, wanted to explain what the infirmity in Parsons is as expressed by Judge Ikuda and how that came to create the same error in this case. If the panel doesn't want me to do that, then I will yield the rest of my time to Mr. Sato. I think it would be a better use of time to talk about things we could consider. All right. Thank you, Your Honor. Thank you. Good morning. I am Nicholas Sato, and I represent the director of the Arizona Health Care Cost Containment System. The district court certified the following question as far as the Medicaid subclass is concerned, and that is whether AXIS's alleged practices, quote, failed to adhere to the Medicaid statute. The only way that that common question survives is if it is grounded in a Parsons-type risk-of-harm analysis. And I understand that this Court is not interested in redeciding Parsons or even addressing it, but even if we assume that Parsons is the law of the circuit. Which we have to do. I understand that. Even based on that assumption, it cannot be used to certify the Medicaid subclass in this case. And let me tell you why. On its face, the purported common question that I just stated doesn't survive Wal-Mart. Whether the practices failed to adhere to the Medicaid statute, that's just another way of asking whether the class members have all suffered a violation of the same provision of law, which Wal-Mart prescribes. More importantly, you can't. But Wal-Mart is different, though, right, because it was decisions by managers in separate stores all across the country, whereas here it's a statewide program and they're suing a single defendant. So why is it the same as Wal-Mart? Well, it's the same as Wal-Mart. The common question is the same. The question that the Court in Wal-Mart said you cannot have, the question being whether all of the employees in that case suffered the same violation of the law. That is not a sufficiently valid common question. And the question ---- If there had been in Wal-Mart a nationwide consistent policy that applied to all the stores that caused the alleged injury that would have been a very different situation than the assumption that the Court made, which is that it's probably individual decisions and there was no evidence of a common policy across the country. Well, in Wal-Mart, I believe the claims were based on individual decisions. And ---- That's what I'm saying, though. And that's because there were many different stores with many different managers making employment decisions. There wasn't one person in charge of all Wal-Mart stores making all employment decisions. But here, there's a single defendant sued on behalf of a program that's statewide, as I understand it. Right. And they are suing the director in his official capacity. But the core of their claim, the crux of their claim, is based on individual alleged failings, not that there's a written policy across the board that applies uniform, but that there's this ---- there's a collection in the aggregate of alleged wrongs that these children did not receive a screening or a treatment on this day or that day. It's ---- that's what their claim is. It's not one claim against one defendant for one written, succinct, clear policy. You have to look at what really the core of the claim is. And under Wal-Mart, you can't ---- you cannot certify it. So say that Medicaid ---- it's a little bit unclear to me exactly what the requirements here are, but say Medicaid requires every child in foster care to get a health screening in the first year. And the State wasn't doing that, so no one was getting screenings. Is that a claim that could be brought as a class? Well, the claim is Medicaid requires access to make available the screenings. So it's not that ---- yes, they have a right to a screening under Medicaid. Access's role, however, is simply just to ensure that they have the opportunity and access to that screening. So what does that mean? Who is supposed to take advantage of the access? Whoever's supposed to make sure that the child takes advantage of it? Well, the children have guardians, but access makes it available to them. They'll get them connected with a provider. The provider sets up the appointment. And at that point, their obligations under Medicaid are satisfied. And at that point, whether or not the child actually makes it to the screening appointment or not, that's not ---- that is not a denial of Medicaid, just simply because they didn't receive it for that reason. And so is the allegation here that just people didn't have the screening and so now we can't tell why, or is the allegation that it wasn't made available because there weren't enough doctors and there weren't enough caseworkers? Well, it's very vague. The allegation is that they just failed to receive services. Well, isn't it because of the defendant's conduct? Isn't that the argument, that the defendant's conduct and failure to have enough resources or whatever people creates a risk of these children are not getting what statutorily they're entitled to under Medicaid? Isn't that basically the argument? Yeah, that's correct. That's their theory. That's their theory. And that's the theory that the district court accepted. But it's wrong, because this whole notion that they're at a ---- It might be wrong on the merits, but we're just at the stage here now of class, of whether the people who are subject to that risk are a class. And the district court said yes, as presumably require applying Parsons anyway. And so what's wrong with that? I mean, ultimately, maybe the whole theory is wrong. Maybe you're providing fabulous service to everybody. But that's not the issue here. Right. The issue is whether there's a common question. And it's not, because going back to Parsons, Parsons even ---- Parsons exists because of the nature of the claims in that case. An Eighth Amendment risk of harm claim. The constitutional injury for purposes of the Eighth Amendment and the Fourteenth Amendment is the substantial risk of serious harm. As soon as they are exposed to that substantial risk of serious harm, at that point there's a constitutional injury, and you can sue on that claim. You don't have to wait for it, for the injury to actually occur. But this notion of at risk or risk of harm is incompatible. It doesn't exist within Medicaid, within the Medicaid Act. And that's why their theory ---- Well, there's a risk that they're not going to receive the services that are required by Medicaid, isn't there? I don't see what the difference is exactly. Could you repeat that question, Your Honor? Well, the risk is that they're not going to receive services that are supposed to receive under the statute. So isn't that ---- Well, that's what they allege. Sure. So why is that different than the risk in Parsons, other than that's deliberate indifference? This is maybe slightly different technically risk, but it's the same basic idea, no? What their theory doesn't match with what is necessary to prove the elements of the claim. They're saying that there's a risk. Okay. Let's assume that that's to be true. That doesn't mean that AXIS failed to provide what it's required to provide under Medicaid or the EPSDT services. Okay. But that's the ---- that comes later in the case, doesn't it? I think ---- well, I think it needs to be ---- it needs to be addressed at this point at class certification, because they're using that at risk as the ---- I'm confused why this matters practically. So in Walmart, there was a claim for damages, so it matters how big the class is or whether it is a class. Here, as I understand it, it's a claim for injunctive relief to get some kind of change to the State program, which either has merit or not. I mean, maybe you'll prove that the State program is perfectly fine and no one will get any relief. But I don't understand why it matters, even if it's just like one plaintiff compared to a whole class of plaintiffs. When you're seeking injunctive relief to fix a funding problem, it seems like one plaintiff could do that. Did you say that you thought Parsons was a damages case? No, no. Put a ---- no. I said Walmart had damages. That's right. So put aside Parsons. Just for this Medicaid claim, you're fighting a lot about whether this class gets certified. And I just, as a practical matter, don't really understand why this claim depends on it being a class at all. Well, I think if, for instance, if this claim were just brought by BK, the named plaintiff, and she would have to allege that she was deprived or denied access to Medicaid services, she would have to prove that. And as we ---- that's the second reason why the Medicaid subclass fails, is because they haven't shown that she's ever been deprived or denied a Medicaid service or that access failed to offer her that service. So she's ---- she is ---- if she were to bring that ---- I mean, that's a separate argument. This gets to ---- I mean, if the named plaintiffs are no good, that's an argument. If they don't have a claim because they just can't prove it, that's another argument. But this fighting about whether it is a proper class seems a little ---- I just am a little confused about whether it has a practical difference when if you could prove the way the State is ---- I think what the plaintiffs need to prove is the way the State is running this Medicaid program violates Medicaid. And it seems like if that's true, probably a single person could prove it, and if it's not true, then they can't. And whether it's a class or not, I don't know why it matters. Well, that's an interesting question. I don't ---- I'm not necessarily agreeing that one person can bring a claim for injunctive relief for themselves based on a system-wide practice. I think that may run afoul of Rule 65, because that injunction could only enjoin or require access to do something as to her. It wouldn't, quote, unquote, fix the whole system. And that's what plaintiffs are trying to do. And that's what they're really trying to get at, is they're bringing someone in like BK who has never ---- that the evidence shows is that she's never been denied a Medicaid service, and then they're pointing to all of these individual instances of alleged deficiencies or failures, and then saying because of that, there should be a class action and the court can come in and, quote, unquote, fix the system. I think that's why it's important, because if it's just one ---- The purpose of a class action is just exactly what you said. Isn't that what the way it's supposed to be? I don't think so. I think the purpose of a class action is you've got a conglomeration of individual claims that are the same, that they're all seeking the ---- they ask a common question, that there's a common answer that can be answered in one stroke. And just because ---- The common question here is that they're all subject to a risk of not receiving services. Well, the common question is whether or not access is violating the Medicaid Act. You can't answer that in one answer. It depends on every single foster child. Was this foster child, was she or he or she ever denied a Medicaid service or deprived an opportunity? Well, you've got to look at the facts. She says that she didn't receive something. Okay, how come she didn't receive something? She could have been offered it. Maybe she just didn't get a ride to her appointment. Maybe she was sick. Maybe she didn't want to go. There's lots of reasons, and you have to look at those reasons to figure out whether this foster child was offered but denied Medicaid services. And you have to do that for each one. So you just can't have one or two or ten plaintiffs say this is a class action because we're challenging the practices and we're all at risk. It doesn't work with a Medicaid-type claim. That's really only limited to ---- well, that is only limited to these claims that have an element built into it, a substantial risk of serious harm that simply doesn't exist here. I'm getting close to time. I would. Thank you. May it please the Court, I'm Harry Frischer. I represent the plaintiff foster children in this case. I'd like to start by addressing the common questions with respect to the Medicaid claim. And I think Judge Adelman and Judge Friedland got to the heart of it with respect to the practices of both defendants that don't get these kids the medical services that they need to get. What we've shown is the practice of overburdening caseworkers with excessive caseloads. And we've had experts to say what does that result in? Among other things, it results in children not getting to the doctor, children not being taken to the doctor, children not being taken to the dentist, children not getting follow-up on the mental health care. That's not their argument. Their argument is that they aren't arguing against the other subclasses. They're arguing against this subclass. And their argument is that under Medicaid it's different. You have to show that it's a violation of the statute. Your general comments that they're not getting aid and they're not being taken care of don't help at all in that. So why don't you get specifically to why counsel was incorrect, that in this particular subclass, not the others, but this particular subclass, you can't go in generalities. You have to show a subclass that has been refused Medicaid, not taking care of generally Medicaid. What I refer the court to is the Ninth Circuit decision in the KDA case, which outlines the requirements for Medicaid someone different than my colleague outlined it. The KDA case makes clear that children actually have to receive the services. It's not sufficient for the Medicaid system to just have them available. And I have to say I had a lot of trouble figuring out what services you think Medicaid requires and were denied to support this claim that you're bringing. Can you point me to where the allegations or the evidence is that says the named plaintiffs had this requirement for Medicaid and didn't get it? Well, what I'm relying on, Your Honor, is the line of authority in KDA that says Federal courts scrutinize Medicaid systems to be sure, to be sure that those systems are adequately designed to provide EPSD services. These are. But we don't scrutinize them unless we have a case that's properly brought that says there's a violation. And I don't understand anything other than just a vague hand-waving. Medicaid exists, and these people didn't get enough medical care. And with respect to BK, the evidence that's in the record, and also part of the second-amended complaint, is that BK didn't receive the mental health care to treat PSDT, to treat mood disorders, psychosis, and anxiety. She didn't receive it. And so where do you explain what about that violated the Medicaid Act? What about that violated the Medicaid Act? And we have a different view of what the Medicaid Act requires. And that also is a common question, that that violated the Medicaid Act because the department, the foster care agency and the Medicaid agency together have an obligation to make sure that children in foster care actually get services. See, now, you're losing me right away, because you want to tie it in with the others. And my question was specifically Medicaid, because that's what they're arguing. Where do you show that there's any of these children that have asked for Medicaid aid and have been refused Medicaid aid? Your Honor, put that way, that's not a requirement, particularly at this stage of the proceeding. It's a class action. I have to show that there are common questions, that the elements of rule and the 23 have been satisfied. It's not a summary judgment motion. It's a motion for class certification. There are common questions as to whether defendant's failure to have enough, I'll give you a very specific example. These children both needed therapeutic foster homes. The record reflects very clearly that they needed it. Repeatedly... That's required by Medicaid, a kind of home? Medicaid requires sufficient resources to meet the mental health needs of the children in care. Repeatedly, there haven't been, they don't have enough therapeutic foster homes, they don't have enough of the resources, the therapists, the trauma-based therapists, they don't have nearly enough of those resources that are required by Medicaid. And that is putting my experts, both my mental health expert and my physical health expert, are saying those are putting children at risk. I have, my plaintiffs can come into court and say, I would like an injunction requiring the state to comply with what KDA says is the Medicaid obligation to have a reasonably designed system to get these kids the care that they need. And they have to comply with that and reasonably design the system to have sufficient service providers, to do it. I don't, in order for me to prevail on that claim, or for plaintiffs to prevail on that claim, we don't need to prove that plaintiff came into the Medicaid department and said, please, sir, can I have this Medicaid service? And the Medicaid department said, no, you may not. That's not the only, that may be a way to prove an individual Medicaid claim. That's not what plaintiffs need to prove here. And in all events, that's for later. That's for perhaps a summary judgment stage. You know, what — But I think under Walmart and Comcast, the Supreme Court has now said that for commonality, you actually do need some evidence of a common problem that's affecting the class. So for this Medicaid claim, it seems like you need to show there's actually some uniform something that violates Medicaid. And I guess I'm still really struggling to see what you — I'm putting aside the due process claims. I think you validly allege them. But as to this Medicaid claim, I just don't know where you're pointing to a specific program that violates Medicaid. What I'm pointing to, Your Honors, is KDA and the requirement that the Medicaid system be sufficiently designed to adequately meet the mental health, physical and dental health needs of the children. The — and we have submitted substantial evidence that it's not. And as a result, children are at risk. We've also — Is the — does Medicaid, like, entirely overlap with your due process claim in, like, what you think the denial is? I just don't understand enough even from what you put in your brief of whether Medicaid covers all health care or only some of what these kids are supposed to get. It's just not explained. Let me be very clear about that. What our contention is, it's the same facts giving rise to the constitutional claim with respect to medical care, the failure to provide medical and mental health care, that those same facts also give rise to the Medicaid claim, except I don't have to prove deliberate indifference for the Medicaid claim. I just have to prove that the — that the system was insufficient. And what I submit to the Court is that that issue, which Mr. Aceto and I disagree on, but that that issue is a common question of law to be resolved not now, but at trial. And that my view, the class's view very clearly is that the failure of the system to get these kids to the doctor, the failure of the system to have enough resources, medical, mental health resources for these kids, that that is a violation of the Medicaid statute. And there's a common question of whether it is or it isn't. Either my view of the law is right or it's wrong. Either my experts are right that the failure of the system to have sufficient resources for these children puts them at risk. Either they're right or they're wrong. All of the — The risk isn't the question, though. The question is, did the lack of sufficient resources violate this specific statute, Medicaid, that Congress wrote? And I just — so I'll read KDA again. But it seems like you have to point to this happened and it violated this section of Medicaid. I still don't hear you saying that. I would point again, Your Honor, to a few things. First, I would point to the ESPDT provisions of the Medicaid statute. That requires the system, particularly for kids in foster care who are in the custody of the State, to get, to actually get medical screens, tests — Where can you — is that in the record? Where do I find that? Yes. That's in our brief, Your Honor, on the Medicaid section, the ESPDT provisions of the Medicaid statute. I can't cite them from memory, but that's certainly in our brief. I mean, it didn't seem like you're — you cited back to your statement of facts. So is that what you're talking about? No, no. There's like one paragraph about Medicaid. That's it. And it cites back to the statement of facts in the brief. I believe the ESPDT provisions of Medicaid. Yes, I see. Okay. Page 5 of your brief. And I would refer you to that. In a nutshell, those provisions require that the system make available — do more than those screening services that they need, and that if the screens show that there are problems, that those problems be addressed, that the children get medically necessary services. Our contention is that the Medicaid system and the child welfare system isn't doing that. And by the way, I'd ask you to look at those provisions in the context of KDA, which has very clear language that the state is obligated to provide those services, not merely make them available, and the state is obligated to design an adequate system so that children are actually getting those services. Again, if that's right or wrong, it's a common question. So I'd refer you to the EPSD provisions of the statute. I'd refer you to KDA. And the upshot of all of that, Your Honors, is that we've established common questions and all the elements of a claim under the — all of the elements to satisfy certification of the class with respect to the Medicaid claim as well as the constitutional claims. And I would just like to add one thing, Your Honors, with respect to the burden of proof at the class action stage, because I think my colleagues at the other side of the caption are urging a burden of proof that does not exist now, that, again, this is — class certification is done at a preliminary stage of the proceeding. It's not a summary judgment motion. I mean, here, the record for class certification that you have before you closed about a year before discovery was done. And the burden is to show that we're prepared to prove, that plaintiffs are prepared to prove, that Rule 23 has been satisfied. The Ninth Circuit in the Sallie case has held that the Court needs only form a reasonable judgment that Rule 23 is satisfied. And the Amgen case made clear that a mini-trial is not required. The Court has no license to engage in free-ranging merits discovery. And we're not required to prove at this stage, plaintiffs aren't required to prove at this stage, that the common issues will be answered in their favor. So what we've done here is shown that the elements of Rule 23 are satisfied, both with respect to the Medicaid claim and with respect to the constitutional claim, and that with respect to the Medicaid claim, it's the same common questions that give rise to the constitutional claim, also give rise to the Medicaid claim. I wonder, if we take your argument at full breath, why you need subclasses at all. The subclasses and the Medicaid subclasses are children that are just entitled to Medicaid, which is almost overlapping with the main class. I mean, some very high percentage, 90-plus percent of the children in foster care are entitled to Medicaid. But for a child who, for some reason, is not entitled to Medicaid, that wouldn't be part of the class. But this confused me, too, because if not everyone in Medicaid — I'm sorry, if not everyone in foster care is entitled to Medicaid, then it would seem like you need evidence that the named child is entitled to Medicaid, and that's not evidence. Your Honor, I'm not sure that that's disputed. And again, this is the class certification stage of the proceeding. No, there is evidence. The district court found that all the children were part of each of the subclasses. Well, so where — but even in the allegations or anywhere, what can you point me to? I mean, to have standing for the Medicaid claim, they at least need to be eligible for Medicaid. Where is that? I can't cite you the page, but I am certain that that was in the record and supported in the record, and the judge found that, that all of the named plaintiffs are members of the general class and all the subclasses. I wonder if we shouldn't ask him to send in that. Yeah, it would be good if you could send in where in the record — a letter that points us to  Sure. Yes, send it to the court with copies to the other side. Sure. And the last thing I will say on that, which — and I'm almost finished — is that it's also very clear that for the — at this stage of the proceeding, standing is determined based on the pleadings. It's not a summary judgment motion. Right. I didn't see an allegation in the complaint about that, so it would be helpful if you could tell us. We will do that, Your Honor. And my time is almost up, so the last thing I will say is that, as the Court is aware, this case has been stayed pending the determination on appeal. The children in foster care are continuing to suffer harm. We've had updated reports that aren't part of the record here, and we would request Is there any remedy that comes from the Medicaid part that doesn't come from the deliberate indifference other part of this case? The remedy would be the same. It's a lower standard of proof, that we don't have to prove deliberate indifference. We just have to prove that the statute has been violated. Let me, just for clarification, why did the district court stay the proceedings in the case for this appeal? The district court did not stay the proceeding. The district court wrote a lengthy opinion rejecting the stay. A motion panel of this Court imposed the stay. Do you want the stay just lifted? I wouldn't mind that, Your Honor. What I'm asking for is the Court to decide this as expeditiously as the Court can. If the Court sees clear to lift the stay, that would be fine. Does the stay affect this case, or does it affect the services that are being provided? It affects this case. We just filed an opinion within the last few months criticizing district court judges that are coming up on a temporary injunction and staying all proceedings until we decide what we think of the preliminary injunction. We were very, very direct about that, so I anticipate maybe there will be some changes where we can move forward with a real action, because even if we make a decision on the law, it's not necessarily binding. We've made that completely clear in our prior cases. So I'm a little concerned about if we have something that is serious at the time, that we spend a year coming up here to the trial and not getting to the real issue. But thank you for advising us what took place, and we'll try and get you an answer as quickly as we can. Thank you very much, Your Honors. Thank you. I'd like to make two points in rebuttal. Plaintiff's counsel said that Medicaid requires, quote, that access ensure that they actually get the care and that they actually get them to the doctor. And in support of those statements, they keep directing the court to KDA, and I would encourage you to read KDA again. It does sound like that. Even if a state delegates the responsibility to provide treatment to other entities such as local agencies or managed care organizations, the ultimate responsibility to ensure treatment remains with the state. It sounds like that. That's correct. And Judge Tashima, you know, when you go back and read that decision, I mean, he was not necessarily interpreting what exactly the Medicaid Act requires. If you look at where that language is in relation to the issue. It's in the EPSDT discussion, which is what. Right. And I would just go back to the actual statute. I mean, the statute says what it says, and that's a statement. But, so, I mean, do we have yet another problem of being bound by KDA, like we're bound by Parsons? I mean, if this is how our Court has interpreted the Medicaid statute. Well, I believe what Judge Tashima meant when he said ensure treatment is that they just have to ensure that they're provided the treatment. Sure, they have to ensure that it's available. Here it is. But to suggest that a case manager can go to a house and take a child and force them into a car and drive them to a doctor's office to ensure that they get treatment, that's ludicrous. And that's not what's required under the statute. If you look at the statute, it says a state plan for medical assistance must, quote, provide for making medical assistance available. That's 1396AA810. 3696AA43 says that they must, quote, provide for arranging for the corrective treatment. So it all goes back to the statute. And whether you want to frame it in terms of assure that they have treatment or assure that they are provided treatment, that's different from saying ensure that they actually receive the treatment no matter what. I mean, they simply don't have the ability to do that. The second point I'd like to make is the standard or the level of proof at this point, we're not arguing that they have to prove that they're going to succeed on their claim ultimately at a trial. We're simply arguing that they have not satisfied their burden of proof at this stage. And this is a quote from the Halliburton case, that plaintiffs wishing to proceed through a class action must actually prove, not simply plead, that the proposed class satisfies each of the requirements of Rule 23. That includes commonality. That includes typicality. And you ask plaintiff's counsel, where's the evidence, where's the evidence? And he's simply referring to his complaint or the order. And the order cites to the complaint, they're nothing but allegations. And I hope if he does submit or point out where in the record the evidence is, we'd have an opportunity to rebut that. I think if you look at their answering brief, they say where they think it is and they cite back to the statement of the case. And the statement of the case cites back to the order, which cites back to the complaint. But, again, we're – this Court is reviewing for an abuse of discretion, and that's based on the evidence that was presented at the time that they filed their motion. That's the only evidence that Judge Silver had before her when she ruled on this motion. That's all that this Court should be considering. Finally, on commonality, I'll just end with this, that the glue that existed in Parsons is simply not here in this case that involves Medicaid claims. Thank you. Thank you, both sides, for the helpful arguments. The case is submitted and we are adjourned for the day. All rise. Report for this session stands adjourned.
judges: Wallace, Friedland, Adelman